IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WADE T. ITAGAKI | ) | CIVIL NO. 09-00110 SOM/LEK |
| | ) | |
| Plaintiffs, | ) | ORDER GRANTING IN PART, |
| | ) | DENYING IN PART DEFENDANTS' |
| vs. | ) | MOTION FOR SUMMARY JUDGMENT |
| | ) | AND DENYING PLAINTIFF'S |
| CLAYTON FRANK, Director of | ) | CROSS-MOTION |
| the Department of Public | ) | |
| Safety, STATE OF HAWAII; JOHN | ) | |
| AND/OR JANE DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTION

I.      INTRODUCTION.

Plaintiff Wade Itagaki says he was incarcerated for three months after he had completed the prison term to which he was sentenced by a state court. He brings claims under 28 U.S.C. § 1983 and under state law against Defendants Clayton Frank, the State of Hawaii's Department of Public Safety Director, and the State of Hawaii. Defendants move for summary judgment on all claims, and Itagaki cross-moves for summary judgment on his negligence claim. The court grants summary judgment to Defendants on Itagaki's § 1983 claims against the State of Hawaii and against Frank in his official capacity. Summary judgment is denied in all other respects.

II.     BACKGROUND.

Itagaki was indicted in state court for second-degree theft on June 13, 1995. See State of Hawaii v. Itagaki, 1PC95-0-

001187, available at http://hoohiki1.courts.state.hi.us/ (last visited June 22, 2010).  Itagaki pled guilty to the charge, and Judge Dexter Del Rosario sentenced him to a five-year term of probation.  Id.  Itagaki violated the terms of his probation on more than one occasion, resulting in more than one revocation proceeding and more than one prison sentence.  When Itagaki failed to appear at a review hearing on March 5, 2003, Judge Del Rosario issued a bench warrant.  Five days later, Judge Del Rosario issued this minute order: "EXEC BW RCVD. Bail CONFIRMD DFT ORDERED TO APPEAR APRIL 16, 2003 @ 8:30A. FOR CONTEMPT OF COURT HRG BEFORE J. DEL ROSARIO."

On April 16, 2003, Judge Del Rosario proposed that the State move to revoke Itagaki's probation.  See Ex. 1 at 4-5, attached to Plaintiff's Response.  The minutes of the hearing state: "CT WILL TAKE NO FURTHER ACTION ON THE CONTEMPT OF CT HRG & WAIT FOR THE MTN/REVOKE TO BE FILED. . . . W/RESPECT TO THE CONTEMPT OF CT WHERE THE CT TOOK NO FURTHER ACTION, CT WILL SET THAT ASIDE AND CONTINUE THE MATTER UNTIL THE MTN/REVOKE PROBATION IS FILED."  Id. at 5.  The State responded by filing a motion for revocation, and a hearing on the motion was set for June 10, 2003.  Id. at 6.  Judge Del Rosario continued the hearing to October 15, 2003, to allow Itagaki to apply for a drug court program.  Itagaki's application was not accepted, and in October 2003, Judge Del Rosario revoked probation and sentenced Itagaki

to a prison term.  Id. at 7, 10.

On November 20, 2006, still in prison, Itagaki wrote a letter inquiring about whether he had completed serving his sentence.  See Ex. E, attached to Defendants' Concise Statement.  He calculated that he had been "over-detained" for 117 days and asked the relevant authorities to "please check on this matter."  Itagaki also noted that he was involved with Tapaoan v. Cayetano, Civ. No. 01-00815 DAE-LEK, a federal case pending at the time in the District of Hawaii challenging the State of Hawaii's alleged failure to release prisoners promptly after a court-ordered release (acquittal or dismissal).[1]

Upon receipt of Itagaki's letter, the Department of Public Safety ("DPS") determined that, on September 5, 2006, Itagaki had completed serving the sentence imposed by Judge Del Rosario.  See Ex. B, attached to Defendants' Concise Statement.  However, the DPS noted that the "Criminal Contempt charge was never updated [in the database] and remained as a 'pending charge.'"  Id.  The DPS contacted Judge Del Rosario's office for information about the status of the criminal contempt charge.

On November 27, 2006, Judge Del Rosario faxed the DPS an Order stating that the court "takes no action on the contempt of court bench warrant issued March 5, 2003."  Ex. B, attached to

---

[1]Tapaoan involved a certified class of persons detained between December 10, 1999, and December 2, 2002.  The present case concerns time Itagaki spent in prison in 2006.

Defendants' Concise Statement.  Itagaki was released later that day.  Ex. G, attached to Defendants' Concise Statement.

On September 12, 2008, Itagaki filed a Complaint in state court asserting claims under § 1983 based on his alleged "over-detention."  He also claims that Defendants were negligent and acted wantonly and maliciously.  On March 16, 2009, Defendants removed the case to this court, stating that they were "expressly NOT waiving their rights to sovereign immunity pursuant to the Eleventh Amendment of the Constitution of the United States."  This caused Itagaki to tell Defendants that the removal did indeed constitute a waiver of Eleventh Amendment immunity.  See Ex. 2, attached to Plaintiff's Responsive Concise Statement.

Defendants now move for summary judgment on all claims, and Itagaki cross-moves for partial summary judgment on his negligence claim.

III.    STANDARD OF REVIEW.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

One of the principal purposes of summary judgment is to

4

identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact."  Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006)(internal quotations omitted).  A fact is material if it could affect the outcome of the suit under the governing substantive law.  Id.  Accordingly, the "nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor."  Id. (quotations and brackets omitted).

Summary judgment for a defendant is therefore appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to the case.  See id.  However, when the moving party fails to carry its initial burden, "the nonmoving party has no obligation to produce anything."  Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc., 210 F.3d 1099, 1102-03 (9th Cir. 2000).  "In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything."  Id.

If the moving party does meet its burden, the burden shifts to the nonmoving party, and the nonmoving party may not rely on the mere allegations in the pleadings but instead "must set forth specific facts showing that there is a genuine issue for trial."  Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891

(9th Cir. 2005)(internal quotations omitted).  Summary judgment should not be granted "where contradictory inferences may be drawn from undisputed evidentiary facts." United States v. Perry, 431 F.2d 1020, 1022 (9th Cir. 1970).  Accordingly, summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts.  See Braxton-Secret v. A.H. Robins Co., 769 F.2d 528, 531 (9th Cir. 1985).  Only when the evidence "could not lead a rational trier of fact to find for the nonmoving party" may a court properly grant summary judgment.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(internal quotation omitted).

IV.     ANALYSIS.

    A.     Defendants Waived Sovereign Immunity By Removing The Instant Action to Federal Court.

The Eleventh Amendment provides that the "Judicial power of the United States" shall not be construed to extend to any suit commenced against one of the states by its own citizens. U.S. Const., Amdt. 11; Hans v. Louisiana, 134 U.S. 1 (1890).  A state may waive its Eleventh Amendment immunity from suit. Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 624 (2002); Independent Living Ctr. of S. Cal. v. Maxwell-Jolly, 572 F.3d 644, 662 (9th Cir. 2009).  A state does so when it removes a case to federal court, regardless of the type of claim (federal or state) asserted.  Maxwell-Jolly, 572 F.3d at 662. Removal is a "voluntary invocation of a federal court's

jurisdiction" sufficient to waive immunity.  <u>Lapides</u>, 535 U.S. at 624.  The Supreme Court explained:

> It would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the "Judicial power of the United States" extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the "Judicial power of the United States" extends to the case at hand.

<u>Id.</u> at 622.

Defendants voluntarily invoked this court's jurisdiction by removing it, thereby waiving sovereign immunity.  Defendants appear to agree, as sovereign immunity is not a ground raised either in their moving papers or in oral argument, despite this court's discussion of the issue in its prehearing inclination.

Having determined that Defendants have waived sovereign immunity, the court turns to the merits, first addressing Itagaki's § 1983 claims, then his state-law claims.

> B.      The State and Frank In His Official Capacity Are Entitled to Summary Judgment on Itagaki's § 1983 claims, but the § 1983 Claims Against Frank in His Individual Capacity Remain in Issue.

Itagaki asserts two § 1983 claims against the State of Hawaii and Frank.  While the State and Frank in his official capacity are entitled to summary judgment on Itagaki's § 1983 claims, Frank does not establish that he is so entitled in his individual capacity.

7

> Section 1983 states, in pertinent part:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable . . . .

42 U.S.C. § 1983.

To succeed on a § 1983 claim, a plaintiff must show that a person acted under color of state law and deprived the plaintiff of rights secured by the Constitution or federal statutes. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). What is clear is that states are not persons for purposes of § 1983. Arizonans for Official English v. Arizona, 520 U.S. 43, 69 (1997). As the Supreme Court notes:

> We observe initially that if a State is a "person" within the meaning of § 1983, . . . . That would be a decidedly awkward way of expressing an intent to subject the States to liability. At the very least, reading the statute in this way is not so clearly indicated that it provides reason to depart from the often-expressed understanding that "in common usage, the term 'person' does not include the sovereign, [and] statutes employing the [word] are ordinarily construed to exclude it." Wilson v. Omaha Tribe, 442 U.S. 653, 667 (1979) (quotations omitted). . . . This common usage of the term 'person' provides a strong indication that 'person' as used in § 1983 likewise does not include a State.

Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989).

"Since this Court has construed the word 'person' in § 1983 to

exclude States, neither a federal court nor a state court may entertain a § 1983 action against such a defendant." Howlett v. Rose, 496 U.S. 356, 376 (1990).

Itagaki argues that a state may be liable under § 1983 when, as here, the state has waived sovereign immunity. Itagaki conflates the statutory requirements that a defendant be a person with Eleventh Amendment immunity.

The scope of liability under § 1983 and the scope of the Eleventh Amendment are "separate issues," even if closely related. Will, 491 U.S. at 64. The ultimate issue in the statutory inquiry is whether a specific statute provides for a state to be sued, whether in state or federal court. The ultimate issue in the Eleventh Amendment inquiry is whether an *unconsenting* state can be sued in federal court under a specific statute. Vermont Agency of Natural Res. v. Stevens, 529 U.S. 765, 780 (2000). Although jurisdictional issues are typically the first matters a court must address, a court may instead decide a matter on a statutory ground when, as is the case with this § 1983 issue, there is no possibility that doing so will expand the court's power beyond the jurisdictional question. See id.

In Bell v. Houston County, 2006 WL 1804582 (M.D. Ga. 2006), the court provided a helpful analysis. The defendant in that case, a sheriff, had removed the case to federal court. The

9

plaintiff argued that, to the extent the sheriff was an arm of the state and was sued under § 1983, the state had consented to suit. The court concluded:

> [A] State is not a "person" and thus cannot be sued for money damages under § 1983 anyway. [citations omitted]. That is, with respect to the official-capacity claim against [the defendant], § 1983 does not permit the cause of action Bell has pleaded. There is therefore no need to answer the constitutional question whether [the defendant] is entitled to immunity on the facts of this case. The instant case perfectly illustrates why § 1983 claims for money damages against a State, a State official, or an "arm of the State" should always be resolved on statutory rather than constitutional grounds. . . . Bell's due process claim is pursued under § 1983, which imposes civil liability on any "person" who "under color of" state law deprives another person of his federally protected rights. 42 U.S.C .A. § 1983 (West 2003). In Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989), the Supreme Court held that "a State is not a person within the meaning of § 1983."

Id. at *12 n.13. Therefore, "*even* if the state waives its Eleventh Amendment immunity in a § 1983 action, it is still not subject to suit because it is not a 'person' under § 1983." Osterloh v. ARDC, 1996 WL 885548, *3 n.3 (D. Neb. Apr. 22, 1996); see also Jude v. Morrison, 534 F. Supp. 2d 1365, 1369 (N.D. Ga. 2008) (holding that a plaintiff's § 1983 claims against defendants in their official capacity are dismissed because they are not persons, not because of Eleventh Amendment immunity).

Itagaki cites no case, and this court has found none,

indicating that a state may be sued under § 1983 based on its waiver of sovereign immunity. The cases cited by Itagaki for that proposition involved § 1983 claims against municipalities. Lutz v. Delano Union Sch. Dist., 2009 WL 2525760 (E.D. Cal. 2007); Lytle v. Carl, 382 F.3d 978, 982 (9th Cir. 2004). While a local governmental entity may be sued as a person under § 1983, a state may not. Accordingly, this court grants the State of Hawaii summary judgment on Itagaki's § 1983 claims on the ground that it is not a person under § 1983.

The court reaches a different result with respect to the § 1983 claims against Frank, the DPS Director. Itagaki's § 1983 claims against Frank in his official capacity are the same as claims against the State of Hawaii and therefore are barred. See Doe v. Lawrence Livermore Nat'l Lab., 131 F.3d 836, 839 (9th Cir. 1997).[2] Itagaki's § 1983 claims against Frank in his individual capacity, however, withstand this motion for summary judgment.

A plaintiff may "establish *personal* liability in a § 1983 action simply by showing that the official acted under color of state law in deprivation of a federal right." Romano v. Bible, 169 F.3d 1182, 1185-86 (9th Cir. 1999). A plaintiff must

---

[2] Only claims for prospective injunctive relief could proceed against Frank in his official capacity. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 106 (1984); Kentucky v. Graham, 473 U.S. 159, 166-67 (1985). However, Itagaki, having been released, is not seeking such relief.

show that the official caused the alleged constitutional injury.
Graham, 473 U.S. at 167.  A plaintiff must show that the
defendant personally participated in the deprivation, King v.
Atiyeh, 814 F.2d 565, 568 (9th Cir. 1987), or knew of the
violations of subordinates and failed to act to prevent them,
Taylor v. List, 880 F.2d 1040, 1054 (9th Cir. 1989).  Finally, a
supervisor may be found personally liable if he "sets in motion a
series of acts by others . . . , which he knew or reasonably
should have known, would cause others to inflict the
constitutional injury."  Motley v. Parks, 432 F.3d 1072, 1081
(9th Cir. 2005) (quotations and brackets omitted).

There is a question of fact as to whether, as the DPS
Director, Frank had the authority to establish policies and
procedures relating to the timely release of prisoners who had
completed their prison terms.  Frank was undisputably on notice
that prisoners had been "over-detained" by the State.  Having
been a defendant in the Tapaoan case, which was a class action
involving claims of "over-detention" and resulting in a $1.2
million settlement, Frank had to have been on notice of alleged
record-keeping problems in his own department.  Whether the
alleged failure to address these problems rises to the level of a
federal law is a triable issue.  Indeed, Frank is likely aware of
another case pending in this court involving a former prisoner's
claims that two DPS employees (one of whom who gave an affidavit

in the present case) "over-detained" that plaintiff under a pattern or practice of calculating sentences to run consecutively, rather than concurrently.  See Alston v. Read, 678 F. Supp. 2d 1061 (D. Haw. 2010).

In seeking summary judgment, Frank provides no evidence describing his duties or role with respect to the "over-detention" of prisoners.  His silence in this regard is deafening.

While not granting summary judgment to Frank on Itagaki's § 1983 claims against him in his individual capacity, the court does narrow those individual capacity claims.  Itagaki refers to alleged violations of the Hawaii constitution.  Claims based on state law are not cognizable under § 1983.  See Read, 678 F. Supp. 2d at 1074 (citing Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 371 (9th Cir. 1998) ("state law violations do not, on their own, give rise to liability under § 1983[.]") (citation omitted)).

In summary, the court grants summary judgment to Defendants on Itagaki's § 1983 claims against the State and against Frank in his official capacity, but denies Frank summary judgment on the § 1983 claims against him in his individual capacity, to the extent such claims are premised on alleged violations of federal law, as required by § 1983.

   C.  Disputed Issues of Material Fact Preclude Summary Judgment on Itagaki's State-Law Claims.

   Itagaki asserts state-law claims for negligence and for wanton and malicious conduct.  These claims are based on Itagaki's alleged "over-detention."  Defendants respond that Itagaki was not "over-detained."  Because there are questions of fact as to whether Itagaki was "over-detained," the court denies the summary judgment motions brought by both sides with respect to the state-law claims.

   The State and its employees can be held accountable in tort in the same manner and to the same extent as a private individual under like circumstances.  Haw. Rev. Stat. § 662-2 (noting that the State waives its immunity for liability for the torts of its employees and shall be liable in the same manner as a private individual).  To succeed on a negligence claim, a plaintiff must show: (1) a duty or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of duty; (3) a reasonably close causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another.  Doe Parents No. 1 v. State of Hawaii, Dep't of Educ., 100 Haw. 34, 68, 58 P.3d 545, 579 (2002).

   Defendants say that, even if they had a duty to keep accurate records and to release prisoners on time, they did not

14

breach that duty. In other words, Defendants claim that they properly detained Itagaki because, at the time he completed the sentence imposed by Judge Del Rosario, there was a pending contempt charge against him that justified his continued imprisonment. Itagaki argues the opposite, saying that the contempt charge had been disposed of earlier.

It is unclear whether the contempt charge was pending when Itagaki's sentence expired. All the court has before it are the minutes of what transpired during state-court hearings. The minutes explain that Judge Del Rosario "took no further action" with respect to the contempt charge, and the court was to "set that aside and continue the matter until the mtn/revoke probation is filed." Ex. 1 at 5, attached to Plaintiff's Concise Statement. The minutes of the hearing on the State's motion for revocation do not reflect a further discussion of the contempt charge. It is unclear whether that was because Judge Del Rosario considered the contempt charge already set aside or because the contempt charge was a separate but still pending matter, or whether the contempt charge was indeed discussed, but the discussion was not reflected in the minutes. Without more, this court cannot determine what the status of the contempt charge was.

It is also unclear that, even if the contempt of court charge was pending, Itagaki could have been held for three months

in jail without being brought before a court on that charge, without counsel, and without the scheduling of a trial. The parties have failed to discuss applicable state law on this matter.

At the hearing on his motion, Itagaki argued that he is entitled to judgment because the State inaccurately calculated his release date. Itagaki says that the 2004 Settlement Agreement in <u>Tapaoan</u> created a duty to implement procedural safeguards ensuring the proper and timely release of prisoners. Itagaki does not establish that the breach of a duty created by contract can form the basis of a negligence claim by a nonparty to that contract. See <u>Read</u>, 678 F. Supp. 2d at 1074-75 (noting that a contractual duty cannot form the basis of a common-law negligence claim); <u>Francis v. Lee Enter., Inc.</u>, 89 Haw. 234, 971 P.2d 707, 708 (1999).

Even if the <u>Tapaoan</u> Settlement Agreement gave rise to a duty owed to Itagaki, Itagaki does not indisputably demonstrate a breach of that duty. Itagaki points to an inter-office memorandum stating that the DPS's database listed Itagaki's release date as April 17, 2007, when his proper release date was allegedly September 5, 2006. Ex. B, attached to Defendants' Concise Statement. But if Itagaki could have been legally held beyond September 2006 on the contempt of court charge, then there was not necessarily an error.

Finally, Frank claims that he is entitled to qualified immunity with respect to the state-law claims. Hawaii law recognizes a nonjudicial government official's qualified or conditional privilege concerning tortious actions in the performance of a public duty. Towse v. State of Hawaii, 64 Haw. 624, 632 647 P.2d 696, 702 (1982). This qualified immunity shields all but the most guilty officials from liability, but not from the imposition of a suit itself. To establish and succeed on claims against a government official, a plaintiff must show that the official was motivated by malice and not a proper purpose. The existence or absence of malice is generally a question for the jury. Bartolome v. City and County of Honolulu, 2008 WL 942573, *10 (D. Haw. Apr. 8, 2008). While a court may rule on the existence or absence of malice when there are uncontroverted affidavits or depositions, this court has no such uncontroverted evidence. Accordingly, Frank does not show on the present motion that he is protected by qualified immunity.

V.      CONCLUSION.

This court grants summary judgment to the State and to Frank in his official capacity with respect to Itagaki's § 1983 claims. This court denies Defendants' motion in all other respects. This court also denies Itagaki's partial motion for summary judgment. This court leaves for further adjudication Itagaki's § 1983 claims against Frank in his individual capacity

and Itagaki's state-law claims.

　　　　　　　　　　IT IS SO ORDERED.

　　　　　　　　　　DATED: Honolulu, Hawaii June 29, 2010



　　　　　　　　　　　　　　　/s/ Susan Oki Mollway
　　　　　　　　　　　　　　　Susan Oki Mollway
　　　　　　　　　　　　　　　Chief United States District Judge

Itagaki v. Frank, et al., 09cv110, ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTION.